THELEN REID & PRIEST LLP
Wynne S. Carvill (Ca Bar No. 076019)
Ellen M. Papadakis (Ca Bar No. 186621)
101 Second Street, Suite 1800
San Francisco, CA 94105-3601
Telephone: (415) 371-1200
Facsimile: (415) 371-1211

GOODWIN PROCTER LLP
J. Anthony Downs (*Pro Hac Vice*)
Russell W. Binns Jr. (*Pro Hac Vice*)
Roland H. Schwillinski (*Pro Hac Vice*)
Exchange Place
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231

Attorneys for Plaintiffs
BOSTON SCIENTIFIC CORP.
and TARGET THERAPEUTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORP. and TARGET THERAPEUTICS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CORDIS CORPORATION,<br><br>Defendant. | Case No.: C02-1474-JW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT** |

## I.  INTRODUCTION

Pursuant to Rules 104, 401, 402 and 702 of the Federal Rules of Evidence, plaintiffs Boston Scientific Corporation and Target Therapeutics, Inc. (collectively "Boston Scientific") move to strike the declaration of defendant Cordis's expert witness, John M. Collins, which Cordis filed in support of its Revised Claim Construction Brief, and to preclude Dr. Collins from testifying at the claim construction tutorial.

SF #783161 v1                                         -1-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO
EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

Dr. Collins's testimony, whether by declaration or at the claim construction hearing, should be excluded for three reasons:

First, Dr. Collins falls well short of qualifying as one of ordinary skill in the art of the endovascular detachable coil devices at issue in this patent suit, and therefore he cannot qualify to testify as an expert in this case. Claims must be construed objectively from the perspective of what one of ordinary skill in the art at the time of the invention would have understood the claim terms to mean. Dr. Collins, however, has never received any experience, skill, training or education concerning detachable coil devices before this litigation. Indeed, he has never designed, used or even *seen* such devices. His only experience, in fact, is the reading of the patents-in-suit and certain related patents and prior art, and meeting with Cordis's counsel. Such experience is plainly insufficient to qualify Dr. Collins as an expert in this case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.), *cert. denied* 516 U.S. 869 (1995) ("*Daubert II*"); *Diaz v. Honson Matthey, Inc.*, 893 F. Supp. 358, 363 n.7 (D.N.J. 1995).

Second, in any event, the submission of Dr. Collins's declaration is in clear violation of this Court's September 24, 2002 Scheduling Order. That Order stated that "the Court will consider only *intrinsic* evidence to interpret the disputed claims" and that "[n]o testimony will be allowed, unless the Court orders otherwise." Scheduling Order ¶ 10 (emphasis added). Dr. Collins's Declaration – which purports to construe the claim terms in dispute and is nothing more than a rehash of Cordis's legal claim construction arguments – is, at best, "extrinsic" evidence that is not permitted under the Court's order.

Third and finally, for essentially the same reasons, Dr. Collins's declaration should be excluded under settled law that such "legal argument" in the guise of expert testimony – even by an expert in patent law – is inadmissible as a matter of law. *See Medtronic v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986).

## II. BACKGROUND ON THE PATENTS-IN-SUIT

Boston Scientific has asserted three patents against Cordis in this patent infringement action. All three patents relate to endovascular detachable coil devices that are used to treat brain

THELEN REID & PRIEST LLP ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

aneurysms, among other things. Boston Scientific's Revised Claim Construction Brief fully addresses the technology behind these patents, and familiarity with that discussion is presumed.

## III. ARGUMENT

The Federal Circuit has held that disputed patent claim language must be construed objectively from what one of ordinary skill in the art at the time of the invention would have understood the claim terms to mean. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). In the process of construing the claim language, the Court must first look to the patent claims, the patent specification, and the prosecution history. *Id.* at 979. The Court may consult dictionaries and technical treatises, if necessary to help the Court understand the underlying technology or to find the ordinary meaning of disputed terms. *See Texas Digital Sys. Inc. v. Telegenix Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002). If the disputed terms cannot be construed from these sources, the Court may consult extrinsic evidence such as expert testimony. *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). However, extrinsic evidence cannot be used to explain ambiguity in claim terminology or to vary claim terms. *Id.* at 1583; *Markman*, 52 F.3d at 986.

### A. Dr. Collins Is Not Qualified To Serve As An Expert In This Action.

At this stage in the litigation the role of experts is limited to providing the Court with a tutorial on the technology involved in the case. Scheduling Order ¶ 1. Dr. Collins – who has absolutely no experience with this technology – is unqualified to fill that role. Federal Rule of Evidence 104(a) requires that the Court address "[p]reliminary questions concerning the qualification of a person to be a witness . . . ." This rule applies more specifically to expert witnesses whose testimony is offered under Federal Rule of Evidence 702. *Nadell v. Las Vegas Metropolitan Police Dept.*, 268 F.3d 924, 927-28 (9th Cir. 2001) ("A district court has broad latitude in deciding how to determine reliability, and its decision to exclude expert testimony is reversed only if 'manifestly erroneous.'") (internal citations omitted).

Under Rule 702, the Supreme Court has held that the trial judge must play the role of "gatekeeper" and admit expert testimony only if (1) the expert is qualified to give an opinion on the particular issue in question and (2) the testimony is scientifically reliable. *Daubert v. Merrell*

SF #783161 v1
-3-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-97 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Cordis bears the burden of establishing that Collins's testimony meets the requirements of Rule 702 by a preponderance of the evidence. *Colony Holdings, Inc. v. Texaco Refinancing and Marketing, Inc.*, 2001 WL 1398403, *3 (C.D.Cal. 2001); *see also Daubert*, 509 U.S. 592, n.10.

The threshold inquiry under Rule 702 is whether Dr. Collins is "qualified as an expert by knowledge, skill, experience, training or education" to proffer expert opinion. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-90; *Forest Conservation Council v. Devlin*, 994 F.2d 709, 713 (9th Cir. 1993) ("the admissibility of expert testimony turns on whether it assists the trier of fact"). In determining whether Dr. Collins satisfies the requirements of Rule 702, the Court must be satisfied that he has the educational and experiential qualifications to render his opinions. Factors that should be considered by the Court in making such a determination include whether the expert: (1) possesses a degree in the relevant field; (2) has sufficient work experience in the relevant field; (3) has published articles or other in-depth studies in the relevant field; (4) has performed actual examination/testing of the matter at issue; and (5) has knowledge of industry standards. *See Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005-06 (9th Cir. 2001); *Gebhard v. Mentor Corp.*, 2001 WL 868453, *2 (9th Cir. 2001); *Daubert II*, 43 F.3d at 1314; *United States v. 99.66 Acres of Land.*, 970 F.2d 651, 657 (9th Cir. 1992); *United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000).

Here, although Dr. Collins has degrees in mechanical engineering and experience with certain unrelated medical devices, he has absolutely no experience in the relevant field of detachable coil devices. His *curriculum vitae* shows no study or training at all in the area of detachable coil devices. Collins Decl., ¶¶ 4-12; Declaration of Russell W. Binns Jr., Ex. 1 ("Binns Decl."). Instead, the focus of Dr. Collins's coursework was on fluid mechanics and biofluids. Binns Decl., Ex. 2, Transcript of the Deposition of John M. Collins, 46-51 ("Collins Trans."). Indeed, at his deposition, Dr. Collins acknowledged that: he has never designed or participated in the design of a detachable coil device (Collins Trans., 68-69); he has never worked in the manufacture of a detachable coil device (*id.* 69); he has never used or implanted a detachable coil

SF #783161 v1
-4-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO
EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

device (*id.* 71); and **he has never even seen or held an actual detachable coil device**. *Id.* Similarly, Collins has no apparent expertise concerning the standards that govern detachable coil devices, including knowledge of prior art devices used for the treatment of aneurysms. *Id.* His *curriculum vitae* does not identify any published papers or books on any devices remotely related to this subject. And Dr. Collins testified at his deposition that his only exposure to detachable coil devices is from the illustrations in the patents-in-suit and the product insert for Cordis's accused infringing device that he reviewed in preparation for his litigation. *Id.* 71-72. Dr. Collins admitted that he does not even understand how the Cordis device works. *Id.* 73.

In fact, before this litigation, Dr. Collins did not have any involvement or experience – let alone expertise – in the field of detachable coil devices. Remarkably, when asked what experience he had in the design of coils, the only thing Dr. Collins could point to is work he did developing the manufacturing process for the wire baskets in dishwashers, which obviously has nothing to do with detachable coil devices used for brain aneurysms. *Id.* 70. His first exposure to the technology involved in this litigation was when counsel for Cordis got him "up to speed with what the devices in question were and . . . what claims were involved and what the different elements were." *Id.* 89:11-14. His opinions are thus not derived from his expertise or knowledge, but only from reading the patents-in-suit and consulting with Cordis's counsel. *Id.* 75-76, 87, 89. However, researching and reading up on selected issues as part of a litigation assignment—as Dr. Collins did here—does not qualify a witness as an expert. *See Daubert II*, 43 F.3d at 1317 ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying . . . we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office"); *Diaz v. Honson Matthey, Inc.*, 893 F. Supp. 358, 363 n.7 (D.N.J. 1995) ("It is hardly the hallmark of expertise to conduct a survey of medical literature just before testifying and to rely on articles up to then unknown or unread by the expert.").

Moreover, the mere fact that Dr. Collins has degrees in mechanical engineering and may have testified as an expert in other patent cases involving unrelated medical devices does not make

SF #783161 v1

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

him an expert in the field of detachable coil devices. Designation as an "expert" in one area of specialty is not a license to unconstrained testimony on all other specialized matters. *See Chang*, 207 F.3d at 1172-73 ("extremely qualified" international finance expert not qualified to testify about authenticity of alleged counterfeit foreign securities because he lacked expertise in identifying counterfeit securities); *99.66 Acres of Land.*, 970 F.2d at 657 (accountant with no experience as an appraiser not qualified to provide expert testimony regarding feasibility studies for developing a mobile home subdivision); *see also Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1175 (1st Cir. 1992) (upholding exclusion of proposed expert testimony in design defect case where witness lacked familiarity with product's design, manufacture, marketing and applicable industry standards); *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1264 (5th Cir. 1986) (court appropriately excluded expert opinion on toxicity of phosgene and causation of death where expert was not knowledgeable in that specific area); *Ancho v. Peutek*, 157 F.3d 512, 519 (7th Cir. 1998) ("Just as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopedic medicine to render an expert opinion on spine surgery, likewise . . . a mechanical engineer . . . lacks qualifications to give expert testimony about plant reconfiguration."); *Eagleston v. Guido*, 41 F.3d 865, 874 (2nd Cir. 1994) (witness's doctorate in sociology was "a credential that does not in itself describe any specific body of scientific or technical expertise pertinent to this case.").

In short, Dr. Collins does not possess the requisite expertise to testify as an expert regarding detachable coil devices and how one of ordinary skill would view the patents-in-suit in the early 1990's time frame. The sum total of Dr. Collins's "expertise" relating to detachable coil devices consists of reading the patents-in-suit and certain related publications, and meeting with counsel for Cordis. *Id.* 75-76, 87, 89. This experience is far from sufficient to qualify Dr. Collins as an expert to provide testimony in this litigation.

**B.    The Submission of Dr. Collins's Declaration Is In Violation Of The Court's Scheduling Order.**

Even if the Court allows Dr. Collins to testify as an "expert" in the area of detachable coil devices – which he is not – Dr. Collins's declaration should be stricken for the independent reason

SF #783161 v1 -6-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

that it is in clear violation of the Court's September 24, 2002 Scheduling Order. In that Order, the Court stated:

> At the [claim construction] hearing the Court will consider only intrinsic evidence to interpret the disputed claims, i.e., the claims themselves, the written description portion of the specification and the prosecution history.... No testimony will be allowed, unless the Court orders otherwise, based upon the timely motion noticed for hearing prior to the Claim Hearing by any party wishing to present testimony.

Scheduling Order, ¶ 10. Dr. Collins's Declaration is not "intrinsic" evidence as permitted under the Order, but, at best, improper "extrinsic" evidence concerning claim construction. Dr. Collins's declaration consists almost entirely of a review of the patents's specifications and prosecution histories and a rehash of Cordis's legal claim construction arguments. For example, Dr. Collins – who has no training in patent law – opines:

- on the legal effect of citations to prior art in the prosecution histories of the '389 and '498 patents, Collins Decl., ¶¶ 28-29;
- on the use of statements made during the prosecution history of the '415 patent to interpret claims in the '385 and '498 patents, Collins Decl., ¶ 30;
- contends that Boston Scientific has "clearly disavowed" certain claim constructions, Collins Decl., ¶ 34;
- and asserts that Boston Scientific was "simply deleting extraneous language" when it amended the application that lead to the '385 patent, Collins Decl., ¶ 64.

In short, none of Dr. Collins's testimony is "intrinsic" evidence as contemplated by the Court's Order and thus should be stricken for purposes of the Claim Construction hearing.

### C. Dr. Collins's Declaration Is, In Any Event, Merely Improper Legal Argument That Dr. Collins Is Not Qualified To Provide.

Finally, even without the standing Scheduling Order prohibiting the type of testimony provided in Dr. Collins's declaration, the declaration reflects an effort to inject improper legal argument into the case disguised as "evidence." As an initial matter, even if such legal testimony were legally admissible, because Dr. Collins is not – nor does he profess to be – a patent law expert, Collins Trans., 66, Dr. Collins is not the one qualified to give it. *Daubert II*, 43 F.3d at 1314; *99.66 Acres of Land.*, 970 F.2d at 657; *Chang*, 207 F.3d at 1172-73.

And, in any event, both the Federal Circuit and other courts have repeatedly upheld the exclusion of such testimony even from patent law experts on matters of law or legal significance

of facts in patent cases. *See, e.g., Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986) (upholding exclusion of testimony by expert on legal issues); *Biomedical Polymers, Inc. v. Evergreen Indus., Inc.*, 976 F.Supp. 98, 100 (D.Mass. 1997) (exercising court's discretion to strike patent law expert's legal analysis as "unnecessary and inappropriate"). Several jurisdictions also have excluded expert testimony from patent law experts regarding all matters beyond the basis of U.S. Patent Office practice and procedures. *See, e.g., Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F.Supp.2d 252, 255-259 (W.D.N.Y. 2000) (containing extensive discussion of the permissible scope of patent law experts); *Revlon Consumer Products Corp. v. L'Oreal S.A.*, 1997 WL 158281 at *3 (D.Del. Mar. 26, 1997) (holding that defendants' expert would be allowed to "testify only as to matters of PTO practice and procedure"); *Minnesota Mining and Manufacturing v. Appeleton Papers, Inc.*, 1998 WL 1054207 at *3 (D.Minn. 1998) (holding that any testimony by expert must be limited to an objective basis of the patent application process, and the sequence of events that led to the patents at issue); *W.R. Grace & Co. v. Viskase Corp.*, 1991 WL 211647 at *1 (N.D. Ill. Oct. 15, 1991) (granting motion to exclude the expert testimony on patent law by an ex-Commissioner of the Patent Office as offering no meaningful assistance to the court under Fed. R. Evid. 702).

Again, Dr. Collins's Declaration is nothing more than a rehash of Cordis's claim construction arguments under the guise of expert testimony from one purportedly "skilled in the art." Dr. Collins makes legal assertions such as whether the patentees "clearly disavowed" claim scope – which is the focus of the claim construction dispute in this case – and the legal significance of other statements made in the prosecution history of the patents-in-suit. These matters are unquestionably legal matters that are within the ken of this Court, not Dr. Collins.

///
///
///
///
///
///

SF #783161 v1                         -8-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)

IV. CONCLUSION

For the foregoing reasons, Boston Scientific respectfully requests that this Court grant the relief requested by Boston Scientific in this motion.

DATED: September 5, 2003

BOSTON SCIENTIFIC CORP. and
TARGET THERAPEUTICS, INC.


By:_____/S/_____
Wynne S. Carvill
Ellen M. Papadakis
THELEN REID & PRIEST LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3601
Telephone: (415) 371-1200
Facsimile: (415) 371-1211

J. Anthony Downs (*Pro Hac Vice*)
Russell W. Binns Jr. (*Pro Hac Vice*)
Roland H. Schwillinski (*Pro Hac Vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231

Attorneys for Plaintiffs Boston Scientific Corp. and Target Therapeutics, Inc.

SF #783161 v1

-9-

THELEN REID
& PRIEST LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' EMERGENCY MOTION TO
EXCLUDE TESTIMONY AND TO STRIKE DECLARATION SUBMITTED BY DEFENDANT'S EXPERT
(Case No. C02-1474 JW)