United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CORDIS CORPORATION,<br><br>Defendant.<br>_____/ | NO. C 02-01474 JW<br><br>**ORDER (1) GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT STRIKING IN PART AFFIRMATIVE DEFENSE OF INVALIDITY BY ANTICIPATION; (2) GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT STRIKING IN PART AFFIRMATIVE DEFENSE OF PRIORITY OF INVENTORSHIP** |

**I.  INTRODUCTION**

Boston Scientific Corporation and Target Corporation ("Plaintiffs") filed this action against Cordis Corporation ("Defendant" or "Cordis") alleging infringement of a number of patents that they hold on methods and devices used for treating aneurysms.

On June 25, 2004, the Court granted Plaintiffs' motion for summary judgment of literal infringement of the U.S. patent numbered 6,238,415 ("the '415 patent").  (See Docket Item No. 582.) On November 14, 2005, the Court denied Defendants' motion for summary judgment of invalidity of the '415 patent and granted in part Plaintiffs' motion for summary judgment striking in part affirmative defense of invalidity by anticipation.  (See Docket Item No. 847.)

Before the Court are Plaintiffs' motions for summary judgment.  In one motion, Plaintiffs seek to have the Court declare the validity of claim 27 of the '415 patent on the ground that it is not anticipated by a series of other patents which were not raised previously by Cordis.  In the other motion, Plaintiffs seek to have the Court declare that the activities previously completed by Lawrence Livermore National Laboratories ("LLNL") in conjunction with Cordis do not invalidate the '415 patent.  Through these motions, Plaintiffs are essentially seeking to have the Court strike Cordis' affirmative defenses of anticipation and priority of inventorship.

A hearing was held on November 14, 2005.  Based on all the papers filed to date and the oral arguments, the Court GRANTS in part and DENIES in part Plaintiffs' motions for summary judgment.

## II.  BACKGROUND

The '415 patent discloses its invention as a mechanical occlusive implant delivery assembly having a rapid response decoupling or detachment mechanism that does not effect significant migration of the implant during release.  '415 patent, col. 2, l. 66 - col. 3, 1. 14.  A complete background of the technology is contained in the Court's October 7, 2003 Claims Construction Order (hereafter Markman Order).

### A.     **Infringed Claims of the '415 Patent**

The Court granted summary judgment in favor of Plaintiffs that Defendant infringed claims 16, 17, 19, 23, 24, 25, 27, 29, 34, and 35 of the '415 patent ("infringed claims") through Defendant's manufacture and sale of TRUFILL DCS Detachable Coil Systems intended to embolize aneurysms.[1] Defendant focuses its challenge to the validity of the '415 patent on the infringed claims.  The claims at issue are listed below:

> 16. An implant delivery assembly for occluding a site in a mammal,
> the assembly comprising:
> an occlusive implant,

---

[1] A complete background of Defendant's device is contained in the Court's June 25, 2004 Order Granting Plaintiff's Motion for Summary Judgment of Literal Infringement of U.S. Patent No. 6,238,415 (hereafter "June Order").

2

a pusher having a proximal section and a distal section,
a selectively operable coupling for attaching the implant to the pusher distal section, said coupling operable by fluid pressure so that when a sufficient amount of fluid pressure is applied to the coupling, the fluid pressure causes the occlusive implant to separate from the pusher.

17. The implant delivery assembly of claim 16 wherein the coupling is a locking member that holds the occlusive implant during delivery and releases the occlusive implant upon the application of the fluid pressure such that the occlusive implant detaches from the pusher at the desired delivery site.

19. The implant delivery assembly of claim 17 wherein the occlusive implant is a coil having a proximal end and a distal end, wherein the proximal end of the coil is adapted to engage the coupling.

23. The implant delivery assembly of claim 16 wherein the fluid comprises a liquid.

24. The implant delivery assembly of claim 16 wherein the pusher comprises a tube.

25. The implant delivery assembly of claim 24 wherein the tube is a metal tube.

27. The implant delivery assembly of claim 16 wherein the coupling comprises a tube.

29. The implant delivery assembly of claim 27 wherein the coupling is a plastic tube.

34. A method for rapidly detaching an occlusive implant into a mammalian site comprising the steps of:
 a) introducing an assembly comprising
  I. the occlusive implant,
  ii. a pusher having a distal section and a proximal section, and
  iii. a coupling, wherein the occlusive implant is attached to the pusher distal section at the coupling, into the mammalian site, and
 b) delivering the occlusive implant to the mammalian site by applying sufficient fluid pressure to the assembly so that the occlusive implant disengages from the pusher distal section at the coupling.

35. A method for rapidly detaching an occlusive implant into a body cavity comprising the steps of:
 a) introducing into a body cavity an assembly comprising an occlusive implant that is detachably affixed to a pusher, and
 b) delivering fluid pressure through the pusher such that the implant detaches from the pusher by the fluid pressure.

3

1   **B.      Claims Construction in the '415 Patent**

2   On September 19, 2003, the Court held a hearing in accordance with Markman v. Westview

3   Instruments, Inc., 517 U.S. 370 (1996), to construe the disputed terms and phrases of the asserted

4   claims. The Court's October 7, 2003 Order Following Claims Construction Hearing construed the

5   following disputed terms in the '415 patent which are relevant to the present findings on validity and

6   invalidity:

| Disputed Claim Language | Court's Construction |
|---|---|
| "implant delivery assembly" | "an apparatus for delivery of occlusive devices, such as embolic coils that comprises three distinct components: a pusher, a coupling, and an implant" |
| "pusher" | "any device or structure intended to push another device or structure" |
| "selectively operable coupling" | "a connecting device that connects the implant to the pusher and that can be selectively operated by the user" |
| "coupling" | "a connecting device that connects the implant to the pusher and that can be selectively operated by the user" |
| "said coupling operable by fluid pressure so that when a sufficient amount of fluid pressure is applied to the coupling, the fluid pressure causes the occlusive implant to separate from the pusher" | "the coupling is a connecting device that can be operated by a user selectively applying fluid pressure to the coupling to separate the implant from the pusher, and the application of the fluid pressure by the user to the coupling causes the detachment of the implant at the coupling" |
| "delivering fluid pressure through the pusher such that the implant detaches from the pusher by the fluid pressure" | Plain and ordinary meaning applies, no specific construction by the Court |

21  (The *Markman* Order at 22-29, Docket Item No. 177.)

## III. STANDARDS

23  The motions before the Court ask the Court to adjudicate two issues in the case: (1) validity

24  of claim 27 of the '415 patent based on non-anticipation; and (2) validity of the '415 patent based

25  priority of inventorship. Plaintiffs' motions do not dispose of the entire case–they merely prevent

28                                                                  4

Cordis from asserting anticipation and priority as affirmative defenses. Accordingly, the Court regards the motions as motions for partial summary judgment.

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." However, inherent in Rule 56 is authority of the District Court to grant partial summary judgment, i.e., on a particular claim or a particular affirmative defense, even if doing so would leave other triable issues.

Partial summary judgment on an affirmative defense is governed by the same standard which applies to summary judgment of a claim. An affirmative defense which must be proved to defeat a claim shall be deemed established (or on cross-motion defeated) when there is no genuine dispute over the material historical facts and under the governing law, the moving party is entitled to have the defense determined in its favor as a matter of law. Fed. R. Civ. P. 56(c)(d); Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

As with a motion under Rule 56(c), a party moving for partial summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. If the movant does not satisfy this initial burden, the non-movant has no obligation to produce anything and summary judgment must be denied. If, however, the movant meets this initial burden, then the burden shifts to the non-movant to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. In other words, to preclude entry of summary judgment, the non-movant must bring forth genuine issues of material fact. An issue of fact is "genuine" if it can reasonably be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." Id. In short, the non-movant "must do more than simply show that there is some

5

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

It is this Court's responsibility "to determine whether the 'specific facts' set forth by the non-movant, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsusuhita, 475 U.S. at 587. In conducting its analysis, this Court must draw all reasonable inferences in favor of the non-movant. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255).

Finally, the motions must be evaluated in accordance with the claim or defense which is the subject of the motion and in accordance with the burden of proof allocated to each party.

## IV.  DISCUSSION

**I.     Plaintiffs' Motion for Summary Judgment of Validity of Claim 27 of the '415 Patent**

The issues in Plaintiffs' motion for summary judgment for the validity of claim 27 are similar to the issue previously brought by the parties.

Cordis cites a number of prior art references as affirmative defenses against the infringed claims of the '415 patent. Though Plaintiffs dispute that the references cited by Cordis anticipate any of the asserted claims of the '415 patent, Plaintiffs contend that claim 27 is so clearly not anticipated by the references cited by Cordis.

For the purpose of this motion, the patents cited by Cordis as prior art are: U.S. Patent No. 4,878,906 ("the '906 patent"), U.S. Patent No. 4,213,461 ("the '461 patent"), U.S. Patent No. Re. 32,348 ("the '348 patent"), U.S. Patent No. 5,382,261 ("the '261 patent"), U.S. Patent No. 5,360,443 ("the '443 patent"), U.S. Patent No. 5,304,195 ("the '195 patent"), U.S. Patent No. 5,645,564 ("the '564 patent"), U.S. Patent No. 5,609,608 ("the '608 patent"), U.S. Patent No. 4,545,367 ("the '367

1  patent"), U.S. Patent No. 4,517,979 ("the '979 patent"), U.S. Patent No. 4,311,146  ("the '146

2  patent"), and Patent No. WO 94/10936 ("the '461 patent").

3       In addition, Cordis contends that its TrueFill Detachable Coil Device ("DCS") also

4  anticipates the '415 patent.

5  **A.    Standards for Invalidity by Anticipation.**

6       Under Section 102(a) of the Patent Act, a patented invention must be "new."  35 U.S.C.

7  § 102(a) precludes the patenting of any invention that "was known or used by others in this country,

8  or patented or described in a printed publication in this or a foreign country" before the date of the

9  invention.  § 102(a); Amgen, Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 113, 1352 (Fed. Cir.

10 2003).  Section 102(b) provides that a patent claim is invalid if the patented invention is described in

11 a "printed publication...more than one year prior to the date of the application for patent in the

12 United States."  35 U.S.C. § 102(b).  See Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 173, 1377

13 (Fed. Cir. 2003).

14      A patent enjoys a presumption of validity pursuant to 35 U.S.C. § 282.  "Consequently, 'a

15 moving party seeking to invalidate a patent at summary judgment must submit such clear and

16 convincing evidence of invalidity so that no reasonable jury could find otherwise.'"  Chrimar Sys.,

17 Inc. v. Cisco Sys., Inc., 318 F. Supp. 2d 476, 491.  To anticipate under either section 102(a) or

18 102(b), the "four corners" of a single prior art document must disclose each and every limitation of

19 the claimed invention.  Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir.

20 2000).  Furthermore, such disclosure must be enabling "such that a person of ordinary skill in the art

21 could practice the invention without undue experimentation."  Id.  Consistent with the truism that:

22 "that which infringes if later anticipates if earlier," Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir.

23 2001), "every prior art reference must be considered together with the knowledge of one of ordinary

24 skill in the pertinent art."  Chrimar, 318 F. Supp. 2d at 491 (citations omitted).

25      Anticipation is a question of fact.  SmithKline Beecham Corp. v, Apotex Corp., 403 F.3d

26 1331, 1343 (Fed. Cir. 2005).  See also Advanced Display Sys., 212 F.3d at 1283 ("the factfinder's

7

role...is to determine whether that single reference describes the claimed invention"). If, however, the record reveals no genuine dispute of material fact, anticipation may be decided on summary judgment. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001). A moving party seeking a finding of no invalidity must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent. Eli Lilly & Co. v. Barr Laboratories, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).

The Court proceeds to consider the prior art references by grouping them by what is similarly claimed by them.

**B.     The '906, '461, and '348 patents.**

These three patents have been thoroughly examined in the Court's November 14, 2005 Order. Insofar as claim 16 of '415 does not read on these three patents, claim 27 cannot read on the same. Therefore, the '906, '461, and '348 patents do not anticipate claim 16 and any dependent claims of the '415 patent.

**C.     The '261 and '443 patents.**

The devices in the '261 and '443 patents disclose a balloon-expandable implant, similar to the '906 patent. As Defendant has previously raised with respect to the '906 patent, there is a genuine issue of material fact as to whether the balloon can be considered a "tube coupling." However, the Court finds, as in the '906 patent, the application of fluid pressure is not sufficient to cause separation of the implant from the balloon coupling. Therefore, the '261 and '443 patents do not anticipate claim 16 and any dependent claims of the '415 patent.

Additionally, the Court finds that the implant devices are not coils. Therefore, claim 27 does not read on either of these patents.

**D.     The '195 patent.**

The '195 patent uses two interlocking balls as a coupling. This coupling is not a tube coupling as in the '415 patent. There is also no "selective application of fluid pressure" which

8

separates the implant from the pusher. The implant may be in the form of a coil. Accordingly, the '195 patent does not anticipate claim 16 and any dependent claims of the '415 patent.

**E.    The '564 patent.**

The '564 patent (a) shows a pusher ('415 patent claim 16), (b) is detached by fluid pressure ('415 patent claim 16), (c) shows a coupling ('415 patent claim 16), (d) shows a coil implant ('415 patent claim 19), and (e) deposits an occlusive implant ('415 patent claim 16). The '564 patent does not use a coupling as a tube ('415 patent claim 27). This implies that claims 16 and 19 are anticipated but that claim 27 is not.

However, since the '564 patent was filed and granted after the '415 patent, anticipation is not an appropriate analysis. The proper analysis is whether the subject matter of the '564 patent has priority over the '415 patent. The Court reserves this discussion for Section II below.

**F.    The '608 patent.**

The '608 patent does claim a tube coupling, as well as selective fluid pressure which separates the pusher from the implant. Accordingly, this patent does not anticipate claim 16 and any dependent claims of the '415 patent.

With respect to the '608 patent, Plaintiffs also move for the Court to strike Cordis' affirmative defense of priority of inventorship. In concluding that the '608 patent does not anticipate claim 16 and any dependent claims of the '415 patent, the issue of priority of inventorship becomes moot. The Court further discusses its findings in Section II below.

**G.    The '367 patent.**

The Court finds that the device of the '367 patent does not have a pusher, it has a flow-directed catheter. Cordis' expert, Mr. Collins, believes that the substitution of a non-flow directed catheter (pusher) for a flow-directed catheter would have been obvious (See Supplemental Disclosure of Expert Testimony of John M. Collins ¶ 57). However, the Court is not addressing any obviousness issues at this time.

The '367 patent does have a coupling which separates the implant from the catheter by selectively operating fluid pressure. However, the device does not have a coil implant, it is a

9

balloon implant. Accordingly, the '367 patent does not anticipate claim 16 and any dependent claims of the '415 patent.

**H.     The '979 patent.**

The '979 patent covers a flow-directed catheter, not a pusher ('979 patent 2:20-23). This device also does not detach the implant from the catheter by selectively operated fluid pressure. The cannula is removed from the retainer mechanism, which is inside the implant (balloon), with fluid pressure. Thereafter, additional force is needed to remove the cannula from the implant ('979 patent 4:9-19). The device of the '979 patent also has a balloon insert, and not a coil insert. Accordingly, the '979 patent does not anticipate claim 16 and any dependent claims of the '415 patent.

**I.     The WO 94/10936 patent.**

This device does not disclose a selectively operated coupling by fluid pressure. The implant is electrolytically detached from the pusher (WO 94/10936 pg. 11:20-24, pg. 12:27-30, pg. 13:6-8, pg. 16:9-16). Additionally, this device also does not disclose the coupling to be a tube. Accordingly, the WO 94/10936 patent does not anticipate claim 16 and any dependent claims of the '415 patent.

**J.     The '146 patent.**

The '146 patent has (1) an occluding implant, (2) a pusher (catheter), (3) a coupling which may separate the implant from the pusher through selective fluid pressure. In one embodiment, the coupling is tube 118, as depicted in Fig. 5 of patent '146. In another embodiment the coupling is tube 156, as depicted in Fig. 9. There is a genuine issue of material fact whether the implant fully separates from the pusher with "fluid pressure," or whether the fluid pressure minimizes the frictional force between the pusher and the coupling, thus requiring additional pull on the pusher to detach the pusher from the coupling. Both options have been argued by the parties (See Supplemental Disclosure of Expert Testimony of John M. Collins ¶ 10; Supplemental Expert Report of Charles Strother, M.D. on Validity Issues ¶ 3.)

The Court will at this time defer judgement of Cordis' claim that the '146 patent anticipates the '415 patent. The issue is reserved for trial.

1 **K.    The TrueFill Detachable Coil Device ("DCS").**

2      Cordis contends that the DCS device anticipates the '415 patent because Plaintiffs have not
3 satisfactorily established a conception or priority date prior to December 22, 1994, the filing date for
4 the '415 patent. Cordis contends that the DCS device was conceived at least on December 19, 1994,
5 if not earlier. Cordis' contention implies zero time was spent preparing the '415 patent for filing.
6 The evidence shows disclosure documents dating back to March and April of 1994 for the '415
7 invention. This establishes a conception date months prior to the December 19, 1994 conception
8 date claimed for the DCS device.

9      The Court finds that the priority date of the '415 patent precedes the conception date of the
10 DCS device. Accordingly, DCS does not anticipate claim 16 and any dependent claims of the '415
11 patent.

12 **II.   Plaintiffs' Motion for Summary Judgment that the Activities of LLNL and Cordis do
13        not Invalidate the '415 Patent.**

14      Cordis contends that the '415 patent is invalid under 35 U.S.C. § 102(g) based on the prior
15 conception and diligent reduction to practice of a fluid-actuated device at the LLNL. Plaintiffs
16 contend that the activities of LLNL and Cordis concerning the development of certain hydraulically
17 activated detachable coil devices which are later claimed in the '564 and '608 patents do not
18 invalidate the '415 patent under § 102(g).

19 **A.    The '564 patent.**

20      As stated in Section I of the Discussion, the '564 patent (a) shows a pusher ('415 patent claim
21 16), (b) is detached by fluid pressure ('415 patent claim 16), ( c) shows a coupling ('415 patent claim
22 16), (d) shows a coil implant ('415 patent claim 19), and (e) deposits an occlusive implant ('415
23 patent claim 16). The '564 patent does not use a coupling as a tube ('415 patent claim 27). This
24 implies that claims 16 and 19 are anticipated but that claim 27 is not.

25      However, since the '564 patent was filed and granted after the '415 patent, anticipation is not
26 an appropriate analysis. The proper analysis is whether the subject matter of the '564 patent has
27 priority over the '415 patent.

28

11

Plaintiffs move for summary adjudication of validity of the '415 patent on the ground that based on the undisputed historical facts, Cordis has not proven by clear and convincing evidence that Cordis was the first to invent the subject matter of the '415 patent. (Plaintiffs' Notice of Motion, Motion and Memorandum in Support of Motion for Summary Judgment that the Activities of LLNL and/or Cordis Do Not Invalidate U.S. Patent No. 6,238,415, hereafter, "Motion for SJ on LLNL Activities.") Essentially, Plaintiffs seek to strike Cordis' affirmative defense of priority of inventorship. Cordis contends that a determination of priority of inventorship is fact-intensive and highly subjective argument and thus, cannot be resolved by way of summary judgment. (Defendant Cordis' Opposition to Motion for Summary Judgment that the Activities of LLNL and/or Cordis do not Invalidate U.S. Patent No. 6,238,415, hereafter, "Opp'n to SJ on LLNL Activities," at 2.)

The law presumes that a patent is valid. 35 U.S.C. § 282 ("Each claim of a patent shall be presumed valid independent of the validity of other claims.") This presumption of validity persists unless or until it has been overcome by convincing evidence of error.

Pursuant to 35 U.S.C § 102(g), an applicant is entitled to a patent unless, "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." 35 U.S.C. §102(g). Section 102(g) operates to ensure that a patent is awarded only to the "first" inventor in law. If a challenger proves that the patentee's invention had been made by a prior inventor, who did not abandon, suppress, or conceal the invention, pursuant to §102(g), the Court is empowered to invalidate the patent.

Because the '564 patent has the later filing date, its patentee is the junior party. See Hahn v. Wong, 892 F.2d 1028, 1032 (Fed. Cir. 1989) (stating the party who files later is considered the junior party). The Federal Circuit has held that the correct standard of proof for priority of invention is "clear and convincing evidence," the junior party bearing the burden of pleading and proving priority. Environ Prods., Inc. V. Furon Co., 215 F.3d 1261 (Fed. Cir. 2000); see also 37 C.F.R § 41.207(a)(2) (2004). There are two alternative ways a challenger of a patent based on priority of inventorship may prove priority: (1) The challenger can prove that it was the first to reduce an invention to practice; or (2) The challenger can prove that it conceived of the invention before the

patentee conceived of it and also prove that the challenger used reasonable diligence to reduce the invention to practice. Id.

The Court considers each of these alternative theories.

### 1. **Proof of priority of invention by proving first reduction to practice.**

The Federal Circuit has held that the person who first reduces an invention to practice is "prima facie the first and true inventor." Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1577 (Fed. Cir. 1996). The issue of "reduction to practice" is a question of law. Scott v. Finney, 34 F. 3d 1058 (Fed. Cir. 1994). To show actual reduction to practice, the junior party must demonstrate that the invention is "suitable for its intended purpose." Id.

Actual reduction to practice requires an inventor to construct an embodiment or perform a process that meets all of the limitations of the asserted claim, and determine that the invention works for its intended purpose. Taskett v. Dentlinger, 344 F.3d 1337, 1340 (Fed. Cir. 2003). Constructive reduction to practice is the filing date of a patent application of an invention. Chen v. Bouchard, 347 F.3d 1299, 1304 (Fed. Cir. 2003).

The evidence establishes that Plaintiffs reduced one embodiment of the detachable coil by December 22, 1994. This date is the '415 patent's application date. The '564 patent was filed on May 22, 1995, five months after the '415 patent. Accordingly, the burden falls to Cordis to present evidence of a reduction to practice of a detachable coil with the three distinct elements claimed by the '415 patent earlier than December 22, 1994.

In using the application date as the constructive reduction to practice date, there is no question that Plaintiffs' would prevail. Nowhere in any of the exhibits or declarations does Cordis produce evidence of an actual embodiment of the claimed invention of the '415 patent before Cordis filed its patent application in May of 1995.

Therefore, with respect to the first alternative way of proving priority of inventorship—first to reduce to practice—Cordis has failed to present evidence, which if, believed by a trier of fact, could prove by clear and convincing evidence that it reduced the invention disclosed in the '415 patent to practice before Plaintiffs.

### 2. Proof of priority of invention by proving first to conceive followed by diligent reduction to practice.

To be entitled to an affirmative defense of invalidity based on priority of inventorship under the "first to conceive theory," Cordis must present clear and convincing evidence of the following:

a. That Cordis conceived the idea of using a balloon to open the gripper, the date of that conception, and that the date of Cordis conception was before Plaintiffs conceived of its detachable coil invention;

b. That Cordis reduced its invention to practice and the date of that reduction to practice; and

c. That the period of time between its conception of using a balloon to open the gripper and its reduction of the system to practice was reasonable.

#### i. Conception

Conception is the formation in the mind of an inventor of a definite and permanent idea of the complete and operative invention. Trovan, Ltd. v. Sokymat Sa, et al., 299 F.3d 1292 (Fed. Cir. 2002). Conception is complete only when the idea is so clearly defined in the inventor's mind that one of ordinary skill in the art can construct the apparatus without unduly extensive research or experimentation. Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1577 (Fed. Cir. 1996).

Cordis contends that the idea of using a balloon to open the gripper was conceived no later than November 1992. (Opp'n to SJ on LLNL Activities at 2.) Since conception requires a permanent idea of a complete and operative invention, to prove the date of conception, Cordis must prove the date that Dr. Lee, one of LLNL's researchers, and the research team knew how to build a gripper-like device that could hold on to the end of a coil. (Id.)

There are conflicting testimonies with respect to whether the researchers actually brought their conception to life. Plaintiffs present Dr. Lee's deposition where he could not recall "ever modeling or using in a model any prototype or device which ultimately became the '564 patented device." (Motion for SJ on LLNL Activities at 4.) However, another researcher, Dr. Krulevitch, testified that they had "built [the] grippers." (Opp'n to SJ on LLNL Activities at 5.)

14

1   The Federal Circuit has held that where evidence of conception is based on the oral
2 testimony of the inventor, such testimony must be corroborated.  Mahurkar, 79 F.3d 1572, 1577
3 (Fed. Cir. 1996).  Courts do not require corroboration when the parties employ physical exhibits to
4 prove conception.  Id.   In this case, Cordis presents a series of memorandums, meeting agendas
5 indicating continuing work on the LLNL device, letters referencing the proposed collaboration of
6 the development of the necessary microtools, and entries in LLNL's privilege log showing that work
7 on preparation of  the patent applications was ongoing from at least as early as April of 1995.
8 (Opp'n to SJ on LLNL Activities, Appendix A.)  In examining the totality of the evidence proffered
9 by Cordis to establish the conception date of the '564 patent, the Court finds that a reasonable jury
10 could find that the '564 patent has priority of inventorship.  Worth noting is that in their moving and
11 reply papers, Plaintiffs do not strongly challenge Cordis' contention that the subject matter of the
12 '564 patent may have been conceived before the '415 patent.  Plaintiffs primarily focus on the second
13 prong of the priority of invention analysis—reasonable diligence in reduction to practice.
14   Accordingly, the Court finds that the evidence proffered by Cordis, if believed by a trier of
15 fact could prove by clear and convincing evidence that it conceived of the subject matter of the  '415
16 patent before Plaintiffs conceived of it.

### ii. Reasonable diligence in reduction to practice.

18   The next element necessary to prove priority based on first to conceive is diligent reduction
19 to practice.  Generally, a patent is awarded to the first party to reduce an invention to practice, unless
20 the other party can show that it was the first to conceive an invention *and* that it exercised
21 reasonable diligence in later reducing the invention to practice.   Mahurkar v. C.R. Bard, Inc., 79
22 F.3d 1572, 1577 (Fed. Cir. 1996) *(*emphasis added).
23   Plaintiffs contend that the testimonies of the researchers, and the memoranda fail to provide
24 the "specific details" required to meet the diligence standard.  (Motion for SJ on LLNL Activities at
25 11.)  Specifically, Plaintiffs point to the absence of laboratory notebooks regarding the development
26 of the LLNL device.  However, each former researchers and employees of LLNL have testified that
27 they maintained laboratory notebooks while employed by LLNL, and that those notebooks were left

15

1   at LLNL upon their departure. (Opp'n to SJ on LLNL at 10.) Cordis responds by stating that these
2   notebooks are not under the control of Cordis but that they are the property of LLNL and the
3   University of California. Cordis represents that repeated requests to obtain the notebooks have been
4   unanswered. LLNL is controlled by the University of California. The University of California has a
5   stake in the validity of Plaintiffs' '415 patent and the outcome of this litigation. (Id. at 11.)
6   Plaintiffs' reply failed to address these issues.

7   Since the Court has concluded that there is a material dispute with respect to the date of
8   conception, the Court declines to address whether Cordis' reduction to practice was reasonable. The
9   Court finds that the diligence inquiry is concerned with whether a party exercised reasonable
10  diligence, and such reasonableness determinations are standard task for the trier of fact.

11  Accordingly, with respect to the '564 patent, the Court will not strike Cordis' affirmative
12  defense under 102(g) at this time. The effect of denying this motion is to leave the issue for trial.
13  However, since the '564 patent does not use a coupling as a tube, even if it is established later that
14  '564 has priority, it would not anticipate claim 27 of the '415.

15  **B.     The '608 patent.**

16  As stated above in Section I of the Discussion, the Court's conclusion that the '608 patent
17  does not anticipate claim 16 or any dependent claims of the '415 renders Cordis' affirmative defense
18  of priority of invention of the '608 patent moot.

19  Worth noting is that Cordis' opposition to Plaintiffs' motion to striking the affirmative
20  defense of priority of inventorship of this patent is devoid of any response to Plaintiffs' charge that
21  Cordis cannot establish conception of the '608 patent prior to the '415 patent. None of the inventors
22  were able to testify when the device of the '608 patent was conceived. The Court finds that Cordis
23  cannot prove by clear and convincing evidence that it conceived of the invention of the '415 patent
24  before Plaintiffs. In failing to establish the date of conception, the Court need not reach whether
25  Cordis was diligent in reducing the invention to practice. Therefore, with respect to the '608 patent,
26  the Court strikes Cordis' affirmative defense under 102(g).

27
28

16

## V. CONCLUSION

The Court GRANTS in part Plaintiffs' Motion for Summary Judgment striking in part affirmative defense of invalidity by anticipation and GRANTS in part Plaintiffs' Motion for Summary Judgment striking in part affirmative defense of priority of inventorship.

With respect to Plaintiffs' motion for summary judgment on the validity of claim 27 of the '415 patent, the Court finds that patents '906, '261, '443, '461, '348, '979, '367, '564, '608, '195, WO 94/10936, and the DCS device do not anticipate claim 16 and any dependent claims of the '415 patent. Accordingly, the Court strikes Cordis' affirmative defense of anticipation with respect to the patents listed above. However, the Court leaves the issue of whether the '146 patent anticipates claim 16 or 27 of the '415 patent for trial because there is genuine issue of material fact with respect to the claims of the patents.

With respect to Plaintiffs' motion for summary judgment that the activities previously completed by Lawrence Livermore National Laboratories in conjunction with Cordis do not invalidate the '415 patent, the Court finds that Cordis has failed to establish a conception date for the '608 patent that is prior to the conception date of the '415 patent. Accordingly, the Court strikes Cordis' affirmative defense of priority of inventorship of the '608 patent.

However, the Court finds that Cordis has proffered evidence raising a genuine issue of dispute as to the conception and reasonable diligence in reduction to practice of the '564 patent. Therefore, the Court will not strike Cordis' affirmative defense of priority of inventorship of the '564 patent at this time–the issue is reserved for trial. Further, as stated above, since the '564 patent does not use a coupling as a tube, even if it is established later that '564 has priority, it would not anticipate claim 27 of the '415.

Dated: March 1, 2006

/s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Amanda Marie Kessel akessel@goodwinprocter.com
Christopher T. Holding cholding@goodwinprocter.com
David T. Pritikin dpritikin@sidley.com
Hugh A. Abrams habrams@sidley.com
J. Anthony Downs jdowns@goodwinprocter.com
Julie Lynn Fieber jfieber@flk.com
Lisa Anne Schneider lschneider@sidley.com
Marc A. Cavan mcavan@sidley.com
Matthew T. Powers mpowers@sidley.com
Michael Francis Kelleher mkelleher@flk.com
Patrick E. Premo ppremo@fenwick.com
Paul F. Ware pware@goodwinprocter.com
Roland Schwillinski rschwillinski@goodwinprocter.com
Stephanie Pauline Koh skoh@sidley.com
Susan E. Bower sbower@sidley.com
Tracy J. Phillips tphillips@sidley.com

Dated: March 1, 2006                              **Richard W. Wieking, Clerk**

**By:\_\_/s/ JW Chambers_____**
      **Melissa Peralta**
      **Courtroom Deputy**