[SEE SIGNATURE PAGE FOR ATTORNEY NAMES]



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and TARGET THERAPEUTICS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CORDIS CORPORATION, <br><br> Defendant. | Case No. C 02 1474 JW <br><br><br> **JOINT INTERIM CASE MANAGEMENT CONFERENCE STATEMENT AND ORDER VACATING INTERIM CASE MANAGEMENT CONFERENCE** |

Pursuant to the Court's September 18, 2008 Preliminary Pretrial Conference Scheduling Order ("Scheduling Order"), plaintiffs Boston Scientific Corporation and Target Therapeutics, Inc. (collectively, "BSC") and defendant Cordis Neurovascular, Inc. ("Cordis") hereby submit this Joint Interim Case Management Conference Statement.

## I. <u>Claims Remaining in the Case</u>

On October 1, 2008, BSC notified Cordis that the patent claims it intends to assert at trial are the following: claims 7, 8, 10, 13, 32 and 35 of the '385 patent; claims 1, 3, 7, 9 and 10 of the '498 patent; and claim 19 of the '415 patent. Ex. A. On November 10, 2008, Cordis identified the prior art it intends to rely on at trial. Ex. B.

Cordis has requested that BSC enter into a covenant-against-suit for all remaining non-asserted claims. Cordis believes that the covenant-against-suit that it proposed over one month ago is straightforward and adequately protects the rights of both parties. BSC's position is that the covenant Cordis has proposed is overly broad and unnecessary. BSC has represented which

claims it will assert at trial and expects to shortly propose a more straightforward stipulation covenanting not to sue on the non-asserted claims.

It is Cordis's position that, in the event that BSC does not agree to some sort of stipulation removing the non-asserted claims from the case, additional claims will be necessary at trial.  BSC believes that Cordis's position is nonsensical.  BSC has indicated which claims it will assert at trial and Cordis has not asserted any counterclaims of its own against any patent claims, so there would be no basis to have a trial on the non-asserted claims.

Because the Court granted summary judgment of infringement of each of the currently-asserted claims of the '385 and '498 patents, no infringement issues remain for trial (other than BSC's claims for willful infringement).  *See* Orders dated January 18, 2008; August 15, 2008.[1] Although the Court vacated and did not reinstate its summary judgment finding that Cordis infringed claim 19 of the '415 patent, Cordis does not currently intend to contest infringement of this claim at trial in light of the Court's later reinstatement of the infringement ruling regarding claim 16.[2]  *See* Orders dated June 25, 2004; July 27, 2007; March 21, 2008.[3]

Cordis believes that the remaining issues for the jury trial are:  (1) BSC's damages and "willful" infringement claims; (2) certain of Cordis's defenses under 35 U.S.C. § 112; (3) certain of Cordis's anticipation and obviousness defenses; and (4) Cordis's 35 U.S.C. § 102(g) defense that Lawrence Livermore National Laboratories first invented what is claimed by the '415 patent. There is also one remaining Cordis unenforceability defense which is subject to a bench trial.

---

[1]    Order dated January 18, 2008, Docket Entry No. 1105 (holding that "Defendant infringes claim 7 of the '385 patent under the doctrine of equivalents."); Order dated August 15, 2008, Docket Entry No. 1176 (holding that "The accused device infringes the following claims under the doctrine of equivalents: Claims 8, 10, 13, 32 and 35 of the '385 Patent and Claims 1, 3, 7, 9, and 10 of the '498 Patent.").

[2]    Cordis reserves the right to appeal this issue, as well as any other decision adverse to Cordis including but not limited to the summary judgment decisions concerning infringement of the '385 and '498 patents and those discussed in the below chart.

[3]    Order dated June 25, 2004 (granting Plaintiffs' Motion for Summary Judgment of Infringement of claims 16, 17, 19, 23, 24, 25, 27, 29, 34 and 35 of the '415 Patent); Order dated July 27, 2007, Docket Entry 1032, (vacating the June 25, 2004 decision); Order dated March 21, 2008, Docket Entry No. 1122 (granting Plaintiffs' Renewed Motion for Summary Judgment of Infringement of claim 16).

-2-

BSC concurs with Cordis except to the extent that Cordis seeks to raise at trial defenses under 35 U.S.C. § 112.  These defenses are untimely because they were first raised a few weeks ago on November 21, 2008 in the supplemental expert report of Dr. Collins.  Although the Court indicated at the September 15 Preliminary Pretrial Conference that the parties could supplement their expert reports, Cordis is improperly using supplementation to revise its defense by injecting brand new invalidity theories, including Cordis's new § 112 written description theory, that were never raised before.  This theory could have—and should have—been raised in 2004 when expert reports were originally due.  Cordis's supplementation is untimely and inappropriate.  Accordingly, BSC intends to file shortly a motion to strike Dr. Collins' supplemental report.

Cordis disagrees that its 35 U.S.C. § 112 defenses are untimely.  Cordis pled 35 U.S.C. § 112 as an affirmative defense in its Answer and discussed that defense in its invalidity contentions and in Dr. Collins prior report.  Dr. Collins supplementation is premised on changes in the law and the law of the case since his last report.  In any event, Cordis will respond fully to any motion to strike if and when such a motion is filed.  In any event, Cordis will respond fully to any motion to strike if and when such a motion is filed.

In the September 18 Scheduling Order, the Court instructed the parties to submit a chart of all claims that remain in the case in light of the Court's rulings on various dispositive motions. The remaining claims are summarized in the chart below.

## JURY TRIAL

| Remaining Claims For Jury Trial | Dispositive Orders |
|---|---|
| BSC's claim for damages | No related dispositive orders |
| BSC's claim for willfulness | No related dispositive orders |
| Certain of Cordis's affirmative defenses of invalidity by anticipation under 35 U.S.C. § 102(b) of:<br>• the '385 and '498 patents; and<br>• the '415 patent | The dispositive orders all concern defenses which Cordis does not intend to assert at trial.  Specifically,<br><br>• With respect to the radio-opaque marker claims of the '385 and '498 patents, the |

-3-

| | |
|---|---|
| | Court granted summary judgment of no prior use or commercial sale under 35 U.S.C. § 102(b). (J. Ware Order dated 3/21/08,  Docket No. 1121 at 12, 13.)<br><br>• With respect to the '415 patent, the Court granted summary judgment against Cordis's affirmative defense of anticipation based on the '906 ,'461 and '348 Patents.  (J. Ware Order 11/14/05 at 18). |
| Cordis's affirmative defense of priority of inventorship under 35 U.S.C 102(g) of the '415 patent by work done by Lawrence Livermore National Laboratories ("LLNL") as reflected in U.S. Patent No. 5,645,564 (the "'564 Patent") (J. Ware Order 3/21/08, Docket No. 1122 at 3) | The Court granted summary judgment against prior inventorship by LLNL U.S. Patent No. 5,609,608 (the "'608 Patent"): "Cordis has failed to establish a conception date for the '608 [LLNL] patent that is prior to the conception date of the '415 patent. Accordingly, the Court strikes Cordis's affirmative defense of priority of inventorship of the '608 patent." (J. Ware Order dated 3/1/06 at 17)<br><br>The Court denied summary judgment with respect to the '564 patent, ruling that "Cordis has proffered evidence raising a genuine issue of dispute as to the conception and reasonable diligence in reduction to practice of the '564 patent."  (J. Ware Order dated 3/1/06 at 17).  This ruling was reaffirmed on March 21, 2008.  (J. Ware Order dated 3/21/2008 at 15 ("Plaintiffs' present no new evidence or argument that eliminates triable issues of fact with respect to whether the evidence Defendant presents proves diligence.")) |
| Cordis's affirmative defense of invalidity by obviousness under 35 U.S.C. § 103 for:<br>• the '385 and '498 patents; and<br>• the '415 patent | No related dispositive orders |
| Cordis's affirmative defense of invalidity under 35 U.S.C. § 112 | No related dispositive orders.<br><br>As noted above, BSC intends to file shortly |

-4-

| | a motion to strike Dr. Collins' November 21, 2008 supplemental report, in which Cordis, for the first time, set forth its invalidity arguments under 35 U.S.C. § 112.  As noted above, Cordis disagrees that these defenses were first set forth in Dr. Collins' supplemental report and will oppose any such motion filed by BSC. |
|---|---|

### BENCH TRIAL

| **Remaining Claim For Bench Trial** | **Dispositive Orders** |
|---|---|
| Cordis's defense of unenforceability of the '385 and '498 patents due to inequitable conduct based on the claim that the patent applicants misled the U.S. Patent and Trademark Office concerning the contents of the 1983 Bari Paper and whether the Bari Paper was cumulative of the Piton Reference.  (J. Ware Order 3/21/08, Docket No. 1121 at 10-11)

There is no remaining unenforceability claim against the '415 patent. | • No inequitable conduct with respect to the '385 and '498 patents based on alleged failure to disclose the '195 and '916 patents, or allegedly misleading PTO about subject matter of the '195 and '916 patents. (J. Ware Order 3/21/08, Docket No. 1121 at 13)

• No inequitable conduct with respect to the '385 and '498 patents based on the doctrine of "infectious unenforceability" (J. Ware Order 3/21/08, Docket No. 1121 at 13)

• No inequitable conduct with respect to the '385 and '498 patents based on alleged failure to disclose prior uses and sales. (J. Ware Order, Docket No. 1121  3/21/08 at 13)

• No inequitable conduct with respect to the '415 patent based on failure to disclose WO 94/10936.  (J. Ware Order 3/21/08, Docket No. 1121  at 13)

• Inequitable conduct defense concerning Dr. Guglielmi's alleged misrepresentation of the Bari paper allowed to proceed to trial.  (J. Ware Order 3/21/08, Docket No. 1121  at 10-11) |

JOINT PRELIMINARY PRETRIAL CONFERENCE STATEMENT
CASE NO. C 02 1474 JW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    Update on Fact and Expert Discovery

Fact Discovery:

*Plaintiffs' Position:*

As indicated in BSC's statement in the September 5, 2008 Preliminary Pretrial Conference Statement, fact and expert discovery closed December 10, 2004 and all that remains is some focused "clean up" discovery.  After the September 15, 2008 Preliminary Pretrial Conference, the parties supplemented their document production with updated financial, sales and marketing information.  Cordis's document production, however, is deficient with respect to international sales from January 2004 through present and "native format" sales data from 2004 to present.  On November 21, 2008 and again on December 1, 2008, BSC notified Cordis of the remaining areas of deficiency.  After Cordis produces such documents, BSC's damages expert will be in a position to finalize his updated damages report which will update BSC's damages position from 2004 (when expert reports were originally exchanged) to the present.

Cordis's assertion that a 30 to 60 day delay of trial is required is without merit.  Even Cordis concedes "that the outstanding discovery can be completed before the February trial date."  *See infra* at 12.  First, with respect to Cordis's claim that BSC has not produced settlement agreements from the MTI and Micrus matters, these settlement agreements were produced on December 2, 2008, which is almost three months before trial.  In any event, none of the settlement agreements are admissible under Federal Rule of Evidence 408.  BSC expects to file a motion in limine under the schedule set forth in the Court's Pretrial Scheduling Order asking for an order precluding Cordis from introducing these settlement agreements into evidence at trial.

Second, with respect to Cordis's request for a 30(b)(6) deposition regarding "certain softness testing documents," this request is untimely and improper.  While it is true that the documents on which Cordis's bases its request for deposition were located and produced after the 2004 discovery cut-off date, the vast majority of the documents referenced in Cordis's notice

-6-

of deposition were produced more than one year ago to Cordis.  For the Court's reference, BSC has attached a chart (with cover letter) sent to Cordis indicating the Bates numbers of the documents referenced in the new deposition notice and the corresponding production date for each of those documents. Ex. C.  For example, Cordis seeks testimony regarding coil "softness" charts and graphs referred to in BSC 85674-BSC 85765 and the coil "compression-softness" analysis referred to in BSC 84741-BSC 84800.  These documents were produced to Cordis on August 30, 2007, more than fifteen months ago.  As shown in the table, this is true for many of the other documents as well.  There is no excuse for Cordis to have waited so long after the close of discovery and the production of these documents to request a deposition. Indeed, of the 11 documents and 63 video files referenced in Cordis's notice, only three of the documents were produced to Cordis within the past nine months.  As for those three documents, BSC has indicated that it is willing to meet and confer regarding the request for deposition testimony on those three documents.  Cordis also ignores the fact that it previously deposed a number of witnesses, including the inventors, regarding the "softness" of coils.  BSC also long ago produced deposition transcripts from the MTI case in which such issues were discussed.  In other words, this is not a new "theory" based on newly discovered "facts" that Cordis was unaware of, so there is no excuse for the significant delay in Cordis requesting such a deposition.  Cordis has also well exceeded its allotted number of depositions in this case.

Cordis says that it "began requesting a Rule 30(b)(6) witness on late-produced documents years ago," but those Rule 30(6) requests were directed at different topics.  In any event, BSC has long objected to additional Rule 30(b)(6) depositions, and if Cordis believed those objections were improper, it should have timely moved to compel the deposition and not waited until now and used it as an excuse to delay trial.  In any event, even if Cordis's request for a 30(b)(6) deposition were granted by the Court, there is no reason that the deposition could not be easily completed before trial.

**JOINT PRELIMINARY PRETRIAL CONFERENCE STATEMENT**
**CASE NO. C 02 1474 JW**

1

2
*Cordis's Position:*

3
Cordis believes that BSC understates the amount of discovery remaining, and that BSC --

4
not Cordis -- is deficient in its discovery efforts.  Indeed, much of the factual discovery discussed

5
by Cordis in the Joint Preliminary Pretrial Conference submitted by the parties on September 5,

6
2008 remains outstanding as recently as this week.  As an example, Cordis noted in the

7
September 5, 2008 Joint Preliminary Pretrial Conference that BSC had not produced settlement

8
agreements from the related MTI and Micrus matters.  At the Preliminary Pretrial Conference,

9
Cordis raised this specific issue with the Court.  BSC indicated that *both* parties could complete

10
*all* remaining "clean-up" discovery within two weeks.  Nevertheless, as of December 2, 2008,

11
BSC had still not produced these documents, even though email correspondence on which Cordis

12
was copied weeks ago indicated that MTI and Micrus have no objections to the production of

13
these documents.  And, contrary to BSC's assertions, these documents are neither irrelevant nor

14
admissible.  Rather, they expressly contradict positions taken by BSC's damages expert who -- in

15
support of a high royalty rate -- opined that the relevant patents had never been licensed.

16
Similarly, as Cordis informed the Court in the September 5, 2008  Joint Preliminary

17
Pretrial Conference, discovery remains to be taken on certain softness testing documents

18
produced by BSC after the close of discovery.  BSC has refused to make a Rule 30(b)(6)

19
deposition witness available regarding these documents in spite of the fact that BSC concedes

20
these documents were produced after the close of discovery, and Cordis will shortly be filing a

21
motion to compel such a deposition.  BSC's untimeliness arguments -- which will be addressed

22
in more detail in the forthcoming motion to compel -- are without merit.  The very chart

23
submitted by BSC demonstrates that the documents at issue were produced after the close of

24
discovery.  And, Cordis began requesting a Rule 30(b)(6) witness on late-produced documents

25
years ago (including at least one of the document at issue in Cordis's Rule 30(b)(6) notice), but

26
BSC took the position that it would not consider proceeding with depositions until after all the

27

-8-

28
**JOINT PRELIMINARY PRETRIAL CONFERENCE STATEMENT**
**CASE NO. C 02 1474 JW**

pending summary judgment motions were resolved.  Those motions were not fully resolved until September of this year.

Expert Discovery:

*Plaintiffs' Position:*

There is little expert discovery left.  At most, it currently appears that there will be supplemental depositions of two technical experts (Dr. Strother and Dr. Collins) and supplemental depositions of the damages experts (Mr. Pampinella and Ms. Elsten), all of whom have been deposed before.

With respect to BSC's expert Dr. Strother, on September 23, 2008, the parties scheduled his deposition for December 5, 2008.  As noted above, it was almost two months later, on November 21, 2008, the Friday before the Thanksgiving holiday week, that Cordis served a supplemental report of its technical expert, Dr. Collins.  Cordis demanded that Dr. Strother respond to the supplemental report by December 1 or Cordis would cancel the December 5 deposition (thus giving Dr. Strother only three business days to consider and respond to the report).  Apparently Dr. Collins' report was delayed due to a death in his family.  Although BSC is sensitive to Dr. Collins' family issue, it is grossly unfair for Cordis to demand that Dr. Strother respond to Dr. Collins' new report within three business days and over the course of the Thanksgiving holiday.  Dr. Strother has indicated that his next available date for deposition is January 8 or 9, 2009, which is still over six weeks before the scheduled trial.  Furthermore, for the reasons discussed above, BSC intends to move to strike Dr. Collins's supplemental report because it is untimely and an improper attempt by Cordis to change its invalidity theories.

As to damages, BSC's expert will be able to update his report once he receives the outstanding Cordis documents.

*Cordis's Position*:

Cordis disagrees with BSC's assertions regarding the scope of expert discovery.  For example, while Dr. Strother has previously been deposed, he has never been deposed on any of

his opinions regarding the validity of the Guglielmi patents. Thus, contrary to the suggestion of BSC, his deposition will not be limited to opinions expressed in his yet-to-be served supplemental report.

Cordis also disagrees with BSC's assertions regarding the substance of Dr. Collins' supplemental report. At the Preliminary Pretrial Conference, Cordis specifically raised the issue of its need to supplement the reports of its experts -- both Dr. Collins (concerning patent invalidity) and Ms. Elsten (concerning damages issues) -- in light of changes in the law, the factual landscape of the case, and the Court's recent rulings on claim construction and infringement. The Court reminded the parties that supplementation of these reports was required by the Federal Rules, and BSC's counsel expressed no objection whatsoever to Cordis's proposed supplementation. Dr. Collins' supplemental report was narrowly tailored to address changes in the law and the law of the case since submission of his prior reports. Cordis will respond more fully to BSC's arguments if and when BSC files a motion to strike.

BSC grossly misstates the facts surrounding the supplemental report of Dr. Collins and the deposition of Dr. Strother. In late September, the parties exchanged emails regarding scheduling Dr. Strother's deposition. At that time, the parties "penciled in" the Strother deposition for December 5. *See* Exhibit D. In early November, the parties again exchanged emails regarding whether the Strother deposition would proceed on December 5. At that time, Cordis indicated that it would be ready to proceed on December 5 "so long as any responsive supplemental report is received by [Cordis] no later than December 1." *See* Exhibit E. Cordis never demanded production of Dr. Strother's supplemental report by December 1, it simply reserved the right not to proceed on December 5 if the supplemental report was not received sufficiently before December 5 to allow Cordis to prepare for the deposition. Indeed, Cordis readily consented to moving Dr. Strother's deposition to January 9 at BSC's request, noting only that postponing the deposition until so close to trial would likely result in Cordis arguing that the trial should not proceed as scheduled. *See* Exhibit F.

-10-

## III.   Update on Settlement

The parties have not reached a settlement agreement but have continued to discuss settlement.

## IV.   The Trial

*BSC's Position:*

For the reasons discussed above, BSC sees no reason why trial cannot proceed as scheduled.  Even if the Court permits Cordis's additional discovery requests, this would amount to about four supplemental depositions of experts who have already been deposed before and a single day fact deposition on "coil softness."  There is no reason why these depositions cannot be completed before trial scheduled to begin February 24, 2009.  Cordis's contention that BSC is "intent upon delaying the trial" is baseless.  BSC timely identified which claims it intends to assert at trial, thus greatly narrowing the remaining issues.  BSC has supplemented its document production over the past two and a half months, months before the scheduled trial.  It is Cordis that delayed supplementation of its technical expert's report and it is Cordis's failure to properly supplement its financial documents that is delaying BSC's supplemental damages report.  Nonetheless, there still remains ample time to complete discovery in advance of the scheduled trial.

*Cordis's Position:*

In light of the discovery yet to be completed, and the fact that both parties anticipate filing motions with the Court concerning discovery issues which will need to be resolved after briefing, Cordis believes the February trial date should be postponed.  Cordis noted in the September 5, 2007 Joint Preliminary Pretrial Conference Statement that whether this case would be able to move promptly towards trial would largely be determined by BSC's cooperation in finalizing the claims it intends to try and providing outstanding discovery or whether the parties will need to have additional discovery disputes resolved by the Court.  BSC appears intent upon delaying the trial.

BSC has failed to provide relevant discovery in a prompt manner -- including the MTI and Micrus settlement agreements -- even though that discovery was requested months ago.  At the Preliminary Pretrial Conference, when the Court set the present trial date, BSC indicated that *both* parties could complete all discovery within two weeks.  At that same Conference, Cordis made a request for the settlement agreements because those agreements demonstrate that the fundamental premise of BSC's damages theory -- that BSC would not permit any other company to be licensed under the patents-in-suit -- is no longer correct.

BSC has also forced Cordis to file a motion to compel a Rule 30(b)(6) deposition, even though BSC concedes that every document listed in the Rule 30(b)(6) deposition was produced after the close of discovery.  BSC apparently intends to file a motion to strike some or all of Dr. Collins' supplemental report, thereby causing serious uncertainty regarding things such as trial exhibits and jury instructions.  BSC contends that its validity expert Dr. Strother cannot be available for deposition before January 8 or 9.  And, by BSC's own admission, it has not yet updated its damages expert report.  While it may be true that the outstanding discovery can be completed before the February trial date, it is equally true that the discovery will not be completed prior to the current due date for the pre-trial submissions.  In short, it is simply unrealistic for the parties to proceed to trial in February given the amount of discovery that remains and the fact that it is rapidly becoming clear that the discovery will not be completed prior to the time pre-trial submissions are due.

Cordis requests that the Court postpone the trial for 30-60 days so that that the parties can complete the outstanding discovery and resolve the issues that remain prior to trial.

-12-

1    Dated: December 5, 2008

2

3

4

5

6

7

8

9

10

11   Dated:  December 5, 2008

12

13

14

15

16

17

18

19

20

21

22   LIBA/1952927.1
     CHI 4502104v1

23

24

25

26

27

28

By:  /s/ *Matthew T. Powers*
Matthew T. Powers (SBN 124493)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
Telephone:   (415) 772-1200
Facsimile:   (415) 772-7400

David T. Pritikin (*Pro Hac Vice*)
Hugh A. Abrams (*Pro Hac Vice*)
Lisa A. Schneider (*Pro Hac Vice*)
Stephanie P. Koh (*Pro Hac Vice*)
SIDLEY AUSTIN LLP
10 S. Dearborn Street
Chicago, IL  60603
Telephone:   (312) 853-7000
Facsimile:   (312) 853-7036

Attorneys for Defendant
CORDIS NEUROVASCULAR, INC.

By:  /s/ *Michael G. Strapp*
Michael F. Kelleher
FOLGER LEVIN & KAHN LLP
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111

Paul F. Ware Jr. (*Pro Hac Vice*)
J. Anthony Downs (*Pro Hac Vice*)
Roland H. Schwillinski (*Pro Hac Vice*)
Michael G. Strapp (*Pro Hac Vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
Tel: (617) 570-1000
Fax: (617) 523-1231

Attorneys for Plaintiffs
BOSTON SCIENTIFIC CORP. and
TARGET THERAPEUTICS, INC.

-13-

**JOINT PRELIMINARY PRETRIAL CONFERENCE STATEMENT**
**CASE NO. C 02 1474 JW**

**\*\*\* ORDER \*\*\***

In its September 19, 2008 Preliminary Pretrial Order, the Court set an Interim Case Management Conference for December 15, 2008 so that the parties may update the Court on their readiness for trial currently set to begin on February 24, 2009.  Upon review of the parties' Joint Interim Case Management Conference Statement, the Court finds that an interim conference is unnecessary at this time.  Accordingly, the Court VACATES the December 15, 2008 conference.

To the extent the parties are disputing over discovery issues, the parties are encouraged to work in good faith to resolve those issues before trial or bring them to the attention of the assigned Magistrate Judge in a timely manner.  Accordingly, the Court DENIES Cordis' request to continue the current trial for 30-60 days due to the parties' on-going discovery disputes.  This case has been pending since 2002.  The Court has resolved numerous dispositive motions and thus, has a strong desire to bring the case to a close and remove it from the Court's docket.  The parties are encouraged to work in good faith to prepare for the February 24, 2009 trial.

As previously set, the parties shall appear at the Final Pretrial Conference set for **February 9, 2009 at 3 p.m.**

Dated:  December 10, 2008

_____
JAMES WARE
United States District Judge

LIBA/1948239